IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION   08 DEC 12 P 3:47

FILED
US DISTRICT COURT CLERK
WESTN. DIST. KENTUCKY

| | |
|---|---|
| THE UNITED STATES FOR THE USE AND BENEFIT OF VT MILCOM, INC.<br><br>Plaintiff,<br><br>v.<br><br>WALBRIDGE-DOTSTER, a Joint Venture<br>613 Abbott Street<br>Detroit, MI 48226-2521<br><br>and<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA<br>1500 Market Street, Suite 2900<br>Philadelphia, Pennsylvania 19102<br><br>FEDERAL INSURANCE COMPANY<br>15 Mountain View Road<br>Warren New Jersey<br><br>and<br><br>SAFECO INSURANCE COMPANY OF AMERICA<br>Safeco Plaza<br>Seattle, Washington 98185<br><br>Defendants. | Civil Action No. 5:08CV-202-R |

## **COMPLAINT**

Plaintiffs, United States of America for the use and benefit of VT MILCOM, Inc., by and through its undersigned counsel, files this complaint against the Defendant, WALBRIDGE DOTSTER, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, and in support thereof alleges as follows:

### *Parties*

1. Plaintiff, VT MILCOM ("MILCOM") is a Maryland corporation with its principal place of business at 532 Viking Drive, Virginia Beach Virginia, 23452.

2. Defendant, WALB RIDGE-DOTSTER ("WD"), is a joint venture entity in which the Joint Venturers members are Walbridge Aldinger Company ("Walbridge") and Doster Construction Company, Inc. ("Doster") with its principle place of business at 613 Abbott Street, Detroit Michigan.

3. Defendant, Travelers Casualty and Surety Company of America is a bonding company with its principle place of business at 1500 Market Street, Suite 2900, Philadelphia, Pennsylvania.

4. Defendant Federal Insurance Company is a bonding company with its principal place of business at 15 Mountain View Road, Warren New Jersey.

5. Safeco Insurance Company of Americas, is a bonding company with its principal place of business at Safeco Plaza, Seattle, Washington.

6. Because the Owner of the construction project giving rise to this cause of action is the United States of America, the project is governed by the Miller Act, 40 U.S.C. §§ 270a-270d and the United States is a nominal party hereto.

### *Jurisdiction*

7. Jurisdiction is founded on the Miller Act, 40 U.S.C. § 270b(d) and 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 exclusive of interest and costs, and the plaintiff and defendant are citizens of different states.

### *Facts Common to All Causes of Action*

8. On or around July 25, 2005 the Defendant WD awarded a subcontract to MILCOM to furnish all labor, materials, tools, equipment, supervision and services necessary to perform all required electrical work for the construction of a command and control center facility at Fort Campbell, Kentucky.

9. The project involved building a 98,900 square foot, two story structure with a partial basement.

10. The Subcontract awarded to MILCOM contained a $5,300,141.00 price with a 650 day period of performance commencing upon WD's issuance of a Notice to Proceed ("NTP").

11. The Subcontract contained a build to print type of specification; meaning that MILCOM had no design responsibility and it was required to build the project as represented on WD's drawings.

12. WD did not issue a notice to proceed to MILCOM. Nevertheless, MILCOM commenced performance of work on the project on or around August 21, 2005.

13. MILCOM fulfilled all of its obligations under the Subcontract by providing labor, services, and materials under the Subcontract in a timely fashion and in a good and workmanlike manner.

14. Notwithstanding MILCOM's fulfillment of its obligations under the Subcontract, WD has failed to pay MILCOM in full for the labor, services, and materials it provided on the Project.

15. Much of the costs for labor, services, and materials that MILCOM incurred related to changes to the project that WD directed, and which delayed MILCOM's subcontract performance.

16. For example, when MILCOM prepared to commence its subcontract performance, WD uncovered several differing site conditions consisting of hidden building foundations, 8" sanitary sewer lines, and manholes that had to be demolished and removed.

17. The additional work required to remove the differing site conditions delayed MILCOM's subcontract performance and caused MILCOM to incur increased labor costs. However, WD did not extend MILCOM's schedule, but instead forced MILCOM to increase its labor force and to accelerate its subcontract performance later in the project to enable WD to meet its schedule commitments to the Government.

18. On or around June 13, 2005, (RFI 00017), WD discovered active communications lines that had to be re-routed. WD directed MILCOM to perform a site survey and then hired another contractor to perform the work. WD did not pay MILCOM for the site survey it performed and delayed MILCOM's performance further with the additional work its other subcontractor performed to re-route the communications lines. However, WD did not extend MILCOM's performance schedule but instead required it to increase its work force to accelerate its subcontract performance.

19. On March 2006, the Government issued its Case Number 004 to MILCOM.

20. The change required MILCOM to re-route the permanent power and communications design for the structure under construction.

4

21. At the time of the change, MILCOM had already procured or made arrangements for the acquisition of services, labor, and materials to install permanent power and communications within the building consistent with WD's original design.

22. As a consequence of the Change Case 004 that WD directed, MILCOM was forced to re-direct its work and to perform Change Case 004.

23. As a direct consequence of WD's imposition of Change Case 004, WD was unable to timely complete construction of the dry main electrical room, allowing water to accumulate in it, which delayed MILCOM's ability to bring power to the building because of the unsafe working condition caused by the water.

24. WD did not cure the problem in the main electrical room until January 2007, and it delayed MILCOM's subcontract performance by approximately 12 months as a consequence.

25. During the period of the delay, instead of issuing a stop work order to MILCOM, WD required MILCOM to maintain a full work force and to complete work and changes that it directed in an inefficient manner.

26. WD issued or processed in excess of 450 RFIs on the project, many of which delayed the project and resulted in changes that MILCOM had to perform.

27. WD further extended MILCOM's subcontract performance by directing its performance of several design changes, in order to avoid having to pay MILCOM for the additional services that WD forced it to perform.

28. By the terms of the Subcontract, MILCOM is entitled to recover its increased labor and material costs caused incurred by virtue of its performance of the changes that WD directed.

29. A balance of $4,172,598.12 remains due to MILCOM under the Subcontract for labor and materials it provided, and for the services that it rendered on the Project.

30. WD's failure or refusal to pay MILCOM for its increased costs incurred to perform the contract constitutes a breach of the subcontract for which WD is liable.

31. MILCOM has made proper and timely demand upon WD for its payment of all sums due and owing to MILCOM, but WD failed and refused to pay MILCOM those amounts.

## COUNT I: Breach of Contract

32. Plaintiff incorporates paragraphs 1 through 32 of this Complaint as if fully set forth herein and further alleges as follows:

33. WD's failure and refusal to pay MILCOM all sums due under the Subcontract as described herein constitutes a breach of contract including its implied duty of good faith and fair dealing for which WD is liable to MILCOM.

34. WD is liable to MILCOM in the amount of $4,172,598.12, the amount due under the Subcontract including sums for extra work performed, delays, disruption and acceleration. MILCOM also requests recovery of pre-judgment and post-judgment interest.

## COUNT II: PAYMENT BOND CLAIM ASSERTED AGAINST THE DEFENDANT BONDING COMPANIES

35. Plaintiff incorporates paragraphs 1 through 34 of this Complaint as if fully set forth herein and further alleges as follows:

36. Travelers Casualty, Federal Insurance Company, and Safeco Insurance Company, as principals on each of the Payment Bonds for WD, has failed to fully and faithfully perform all of their obligations under their Contracts with the United States and its Subcontract with WD, by failing to pay for labor and material provided by MILCOM on the Project.

37. Pursuant to the terms and conditions of the Payment Bond, and pursuant to the Miller Act, 40 U.S.C. § 270b, WD is liable to MILCOM for all amounts due under the Subcontract for labor and material provided by MILCOM to the project, plus interest, attorney

fees and the costs incurred by MILCOM for WD's failure to make prompt and full payment of all sums due and owing to MILCOM.

## PRAYER FOR RELIEF

WHEREFORE, MILCOM demands against the Defendants, WD and Travelers Casualty, as follows:

A. Compensatory damages in an amount to be determined at trial but not less than $4,172,598.12; and

B. That it be awarded pre-judgment and post-judgment interest at the maximum rate permitted by law; and.

C. That it recover its attorney fees, costs, and expenses and other costs incurred in pursuing this claim; and

D. Such other proper Orders and further relief that this Court deems just and equitable.

E. The Plaintiff requests a trial by jury on all issues triable by jury as a matter of right or statute.

Respectfully submitted,

/s/ Kenneth A. Martin
Kenneth A. Martin
The Martin Law Firm, P.L.L.C.
6723 Whittier Avenue, Suite 200
McLean, VA 22101
(703) 918-0350 (Telephone)
(703) 918-0386 (Facsimile)
ken@martin-lawfirm.com

/s/ Daniel N. Thomas
Daniel N. Thomas
THOMAS & ARVIN
1209 S. Virginia Street
P.O. Box 675
Hopkinsville, Kentucky 42241-0675
(270) 886-6363 (Telephone)
(270) 886-8544 (Facsimile)

DATED: December 9, 2008